UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| KENNETH O. GRADDY,<br><br>        Plaintiff,<br><br>    v.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>        Defendant. | No. CV 05-8952-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.

## PROCEEDINGS

Plaintiff filed this action on December 28, 2005, seeking review of the Commissioner's denial of his application for Supplemental Security Income payments. The parties filed a Consent to proceed before the undersigned Magistrate Judge on January 19, 2006. Pursuant to the Court's Order, the parties filed a Joint Stipulation on September 25, 2006, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on April 21, 1964. [See Administrative Record ("AR") at 53.] He has an eleventh grade education, and past work experience as a gardener and maintenance worker. [AR at 69, 83-85, 220.]

On February 18, 2004, plaintiff protectively filed an application for Supplemental Security Income payments, alleging disability due to "severe back pain and injury." [AR at 53-56, 63.] He claimed he has been unable to work since May 25, 1995. [AR at 26, 53, 63.] After his application was denied initially and on reconsideration, plaintiff was afforded a hearing before an Administrative Law Judge ("ALJ") on March 1, 2005, at which plaintiff appeared with counsel and testified on his own behalf. [AR 216-41.] A supplemental hearing was held on April 26, 2005, at which plaintiff again appeared with counsel; a vocational expert testified. [AR at 242-51.] On May 6, 2005, the ALJ concluded that although plaintiff cannot perform his past relevant work [AR at 27], he is capable of performing a less than full range of light work,[1] and that there are a significant number of jobs in the national economy that he can perform.  [AR at 27-28.] Accordingly, the ALJ found plaintiff not disabled. [Id.] On November 23, 2005, the Appeals Council advised that the ALJ's decision would stand as the final decision in plaintiff's case. [AR at 4-7.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

---

[1] Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. §§ 404.1567(b) and 416.967(b).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or

equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

Applying the five-step sequential evaluation process, the ALJ found no evidence that plaintiff had engaged in substantial gainful activity since the alleged onset date of disability. [AR at 23.] At steps two and three, the ALJ concluded that plaintiff has a severe impairment consisting of "severe L4-5 spinal stenosis and mild L3-4 spinal stenosis," but that the impairment does not meet or equal any impairment in the Listing. [AR at 23.] At steps four and five, the ALJ concluded that plaintiff is not able to perform his past relevant work, but has the residual functional capacity ("RFC")[2] to perform basic sustained work activity limited only by "an inability to lift more than 25 pounds occasionally and 10 pounds frequently, an inability to stand and/or walk more than six hours in an eight hour workday and a required option that [plaintiff] be allowed to sit or stand at will." [AR at 23, 27.]   She then found that a significant number of jobs exist in the national

---

[2]    Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

economy that plaintiff can perform. Accordingly, the ALJ found plaintiff not disabled. [AR at 27-28.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to properly consider the opinions of plaintiff's treating physicians. For the reasons explained below, the Court agrees with plaintiff in part, and remands this matter for further proceedings.

### A.   THE EVIDENCE

In November, 2002, prior to the period at issue in plaintiff's application, Dr. Artis Woodward wrote that plaintiff had been under his care for degenerative disc disease of the lumbar spine, which had gradually worsened since plaintiff's work-related injury in 1995. Plaintiff had taken anti-inflammatory medication, was instructed to lose weight, and was given rehabilitative exercises. Dr. Woodward considered plaintiff to be totally disabled, and opined that his prognosis is "most guarded." [AR at 111.] In March, 2003, Dr. Woodward wrote that plaintiff's condition had changed little, other than him developing significant varicosities. He remained totally disabled as a result of degenerative disc disease. [AR at 112.]

In December, 2003, Dr. Howard R. Bass indicated that he was currently treating plaintiff for chronic low back pain, and that in his opinion, plaintiff is permanently disabled. [AR at 114.] On March 22, 2004, Dr. Bass completed a detailed analysis of plaintiff's condition. He diagnosed plaintiff with a history of pars vertebral fractures, and chronic lumbosacral spine strain and sprain with bilateral radiculopathy. Dr. Bass' objective findings included tenderness and spasms at plaintiff's lower back; that plaintiff walked with an antalgic gait; that he had difficulty walking heel and toe due to pain and spasms; and his range of motion of the lumbosacral spine and on forward flexion were restricted. Plaintiff had moderate to severe tenderness to palpation at his lumbar spine, and severe pain at his lumbosacral and sacrococcygeal spine and at the sacroiliac area. Dr. Bass also conducted a psychological/psychiatric examination of plaintiff, and diagnosed him with depression, post-traumatic stress disorder, and acute stress reaction. Dr. Bass concluded

1 | that plaintiff could care for himself, but due to symptomatology, he was unable to perform any type of work activities at that time, and his prognosis without treatment is poor. [AR at 135-44.]

On April 9, 2004, Dr. A. Recalde completed a physical residual functional capacity assessment, in which he concluded that plaintiff can occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk for about 6 hours and sit for about 6 hours, in an 8 hour work day. [AR at 147-54.]

On September 20, 2004, plaintiff was examined by Dr. Kamran Ghadimi.  Dr. Ghadimi noted severe facet joint tenderness at L3-S1, bilaterally, that back extension and side rotation increased plaintiff's back pain severely, and assessed plaintiff with severe back pain and lumbar radiculopathy and facet arthritis. [AR at 164-65.]

In October, 2004, Dr. Albert Grabb examined an MRI of plaintiff's spine, and concluded that it revealed a "severe L4-5 spinal stenosis as a result of significant disc bulge and/or herniation at this level."  There was also a mild L3-4 spinal stenosis. [AR at 202.]

In her decision, the ALJ commented on the examination conducted by Dr. Bass in March, 2004, as well as some of his findings.  She found Dr. Bass' assessment of plaintiff's mental condition "not persuasive," as "Dr. Bass is a doctor specializing in physical medication and rehabilitation, not psychiatry."  The ALJ further noted that there is no evidence since the application filing date of any mental complaints that would indicate limiting mental conditions. She rejected the opinion of Dr. Bass that plaintiff is unable to perform work activity since it, along with other assessments that predated the period at issue, are "conclusory in nature and address the legal issue of disability, which is an issue reserved for the Administrative Law Judge."  She also rejected those opinions as "not supported by the objective record, which does not document findings or functional limitations consistent with any disabling impairments."  Finally, she noted that there is no evidence of follow-up treatment with Dr. Bass.  As for Dr. Woodward, she rejected his opinion of disability for the same reasons, and since it predates the filing date.  Instead, the ALJ adopted the assessment of the state agency consultant that was completed following the consultant's review of the documentary evidence. [AR at 23-25.]

/

**B.    TREATING PHYSICIANS' OPINIONS**

Plaintiff contends that the ALJ did not properly assess his residual functional capacity, as the RFC assessment is inconsistent with the findings of Dr. Woodward and Dr. Bass. Joint Stipulation ("Joint Stip.") at 4. Plaintiff argues that the ALJ ignored the findings of these treating physicians, and instead reviewed the evidence in a piecemeal fashion. By doing so, the ALJ incorrectly rejected the opinion of Dr. Bass that plaintiff is disabled from work activity, an opinion that is consistent with Dr. Woodward's disability determination. Plaintiff also contends that the ALJ's reason for rejecting Dr. Bass' opinion -- that he is not a psychiatrist -- and her reliance instead on the non-examining, non-treating physician, were inappropriate. Joint Stip. at 6-7. Further, plaintiff asserts that defendant miscited the record concerning Dr. Grabb and Dr. Ghadini, and that both of their opinions actually support the opinions of Dr. Bass and Dr. Woodward. Joint Stip. at 12-13.

It is well established in this Circuit that a treating physician's opinion is entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830; Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). Where the treating physician's opinion is controverted by the opinion of other physicians of record, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

"The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831. Opinions of a non-examining, testifying medical advisor may serve as

substantial evidence only when they are supported by other evidence in the record and are consistent with it. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes, 881 F.2d at 750 (quoting Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986)). "'A report of a non-examining, non-treating physician should be discounted and is not substantial evidence when contradicted by all other evidence in the record.'" Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984), quoting Millner v. Schweiker, 725 F.2d 243, 245 (4th Cir. 1984).

For the following reasons, the Court agrees with plaintiff's contention. First, to the extent that Dr. Woodward's opinions were given well before the time put at issue by plaintiff's application, and are only minimally instructive to the Court's analysis herein, they still provide some evidence that plaintiff's condition arose prior to his application date, and that findings of disability have been previously made. Thus, they lend some support to the later opinion of Dr. Bass.

Second, a principal reason given by the ALJ to reject as "not persuasive" the opinion of Dr. Bass -- that he rendered a psychiatric opinion but is not a psychiatrist [AR at 25] -- is not legitimate. The case cited by defendant to support its assertion that the ALJ is permitted to give less weight to a general practitioner than to a specialist (Lombardo v. Schweiker, 749 F.2d 565, 566 (9th Cir. 1984)), involved a situation where a specialist had actually provided an opinion that contradicted that of a general practitioner. No such contradictory expert psychiatric opinion was given here, only the opinion of Dr. Bass. His opinion of plaintiff's psychiatric condition is competent evidence that must be considered. Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir. 1987).[3]

Neither does the ALJ in rejecting Dr. Bass' opinion account for his subjective assessment of plaintiff's condition. "The subjective judgments of treating physicians are important, and

---

[3] Plaintiff's telephonic "denial" of psychiatric problems to a non-medical eligibility worker [AR at 25, 97], with whom plaintiff may not have had any prior meaningful conversations or the sort of relationship a patient has with a treating physician, is weak evidence of the lack of psychological issues.

8

properly play a part in . . . medical evaluations.  Accordingly, the ultimate conclusions of these physicians must be given substantial weight."  Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  This makes sense as "treating physicians . . . bring a 'unique perspective to the medical evidence'. . . . The treating physician's continuing relationship with [plaintiff] makes him especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment." Lester, 81 F.3d at 833, citing 20 C.F.R. § 404.1527(d)(2).  This is especially true where the treating physician reached his conclusion based at least in part on observations of plaintiff during his treatment sessions; Dr. Recalde had no such sessions with plaintiff.

   The Court finds while some of the other reasons given by the ALJ to reject Dr. Bass' opinion of disability -- the opinion is conclusory, it addresses a legal issue, it is not supported by objective record, and there was no evidence of follow-up treatment -- may be specific and legitimate, others are not.  The ALJ need not accept a treating physician's opinion on the legal issue of disability, as it is not a medical finding, but is a conclusion reserved for the Commissioner. See 20 C.F.R. § 416.927(e)(2).  This rationale does not undercut Dr. Bass' objective findings, however, which included limited range of motion, weakness, and severe tenderness. Further, Dr. Bass' opinion is far less conclusory than that of Dr. Recalde.  The "conclusory" nature of Dr. Bass' report cannot, in this instance, serve to discredit Dr. Bass' opinion.  Finally, as discussed below, the objective record -- which includes findings of severe spinal stenosis, severe back pain, lumbar radiculopathy and facet arthritis -- support the opinion of Dr. Bass.  On balance, the reasons provided by the ALJ to reject the opinion of Dr. Bass were not sufficient.

   Next, for the ALJ to rely on the opinion of Dr. Recalde, that opinion must be supported by other evidence in the record.  Here, Dr. Grabb, on review of the MRI, found severe spinal stenosis at L4-5 and mild spinal stenosis at L3-4.  While no significant abnormalities were found at L5-S1, the ALJ makes no findings as to why the lack of abnormalities at one point on the spine would render insignificant the severe and mild impairments at two other points on the spine.  Dr. Robert Glazer's largely "line-through-the boxes" report [AR at 184-86], unlike the detailed report of Dr.

Bass, is the sort of conclusory evaluation frowned upon to provide support for medical opinions. See Magallanes, 881 F.2d at 751; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (the ALJ need not accept a treating physician's opinion which is "conclusory and unsubstantiated by relevant medical documentation"); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ properly rejected doctor's opinion because they were check-off reports that did not contain any explanation of the bases of their conclusions); Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized medical opinions over check-off reports).  In addition, while Dr. Ghadimi found no remarkable deficit on motor examination of plaintiff, he assessed severe back pain and lumbar radiculopathy and facet arthritis. [AR at 164-65.] Again, the ALJ offers no explanation or makes any findings why these opinions are consistent with those of Dr. Recalde, other than to conclude that plaintiff should have a sit/stand option. [AR at 25.]

Further, to the extent the ALJ found an ambiguity in the record concerning whether or not plaintiff had "a true lumbar radiculopathy condition affecting the lower extremities" [AR at 24], as no studies had been performed to make this determination, she had a duty to further develop the record in this regard. Indeed, an ALJ's duty to develop the record is triggered when there is "ambiguous" evidence or when the record is "inadequate" to allow for proper evaluation of the evidence.  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001); see 20 C.F.R. §§ 404.1512(e), 416.912(e); Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

Accordingly, in that multiple reasons given by the ALJ to reject the disability opinion of Dr. Bass were suspect, and evidence claimed by the ALJ to support the opinion of Dr. Recalde may in fact not support that opinion,[4] remand is warranted.

/

/

/

### VI.

---

[4] The ALJ concludes that plaintiff can occasionally lift and carry 25 pounds; Dr. Recalde limited plaintiff to 20 pounds occasionally.  The ALJ does not explain this discrepancy.

### **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to determine if specific and legitimate reasons exist to disregard the opinion of Dr. Bass, in part in light of the consideration that must be afforded to his psychiatric evaluation, as well as the "severe" findings of Dr. Grabb and Dr. Ghadimi. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: October 10, 2006

/S/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE